Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/20/2022 09:07 AM CDT

North Star Mutual Insurance Company,
as subrogee of Julie Blazer, appellee,
v. Travis Stewart, appellant.

___ N.W.2d ___

Filed February 25, 2022.    No. S-21-485.

1. **Jurisdiction: Appeal and Error.** The question of jurisdiction is a question of law, which an appellate court resolves independently of the trial court.
2. **____: ____.** It is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.
3. **Subrogation: Words and Phrases.** Generally, subrogation is the right of one, who has paid the obligation which another should have paid, to be indemnified by the other.
4. **Subrogation: Equity: Contracts: Statutes.** A right to subrogation may arise under principles of equity, may be contractual, or may be set out in statute, and no single rule can be laid down which will apply to every subrogation claim.
5. **Parties.** A real party in interest is one who, under the substantive law, has a claim to the relief sought. In this way, the real party in interest inquiry turns on the substantive law of the claim.
6. **Actions: Parties.** The purpose of the real party in interest statute is to prevent the prosecution of actions by persons who have no right, title, or interest in the cause.
7. **Actions: Parties: Jurisdiction: Standing.** The question whether the party who commenced an action has standing and is therefore the real party in interest is jurisdictional, and because the requirement of standing is fundamental to a court's exercise of jurisdiction, either a litigant or a court can raise the question of standing at any time.
8. **Standing: Jurisdiction: Pleadings: Evidence: Affidavits: Proof: Words and Phrases.** A court's consideration of standing will vary depending on when the issue is raised during the progression of a

case. If standing is challenged at the pleadings stage, before an evidentiary hearing and before any evidence outside of the pleadings is admitted, it is deemed a "facial challenge." In considering a facial challenge, a court will typically review only the pleadings to determine whether the plaintiff has alleged sufficient facts to establish standing. But when an issue of standing is presented and the court holds an evidentiary hearing and reviews evidence outside the pleadings, it is considered a "factual challenge." When a factual challenge is made, the party opposing the motion must offer affidavits or other relevant evidence to support its burden of establishing subject matter jurisdiction.

9. **Records: Affidavits: Appeal and Error.** An affidavit used as evidence in the trial court cannot be considered on appeal of a cause unless it is offered in evidence in the trial court and preserved in and made a part of the bill of exceptions.

10. **Actions: Insurance: Tort-feasors.** The insured's cause of action against the tortfeasor cannot be split, and at all times, there is one cause of action on the part of the insured against the tortfeasor.

11. ____: ____: ____. When the indemnity paid by the insurer covers only part of the loss, leaving a residue to be made good to the insured by the wrongdoer, the right of action remains in the insured for the entire loss.

12. ____: ____: ____. The rule against claim splitting is founded on the principle that the wrongful act was single and indivisible, and gives rise to but one liability. Upon this theory, the splitting of the causes of action is avoided and the wrongdoer is not subjected to a multiplicity of suits.

13. **Actions: Insurance: Tort-feasors: Parties: Statutes.** Under statutes providing that every action must be prosecuted in the name of the real party in interest, if the insurance paid by an insurer covers only a portion of the loss, the right of action against the wrongdoer who caused the loss remains in the insured for the entire loss, and the action must be brought in the name of the insured.

14. **Actions: Insurance.** When an insurer indemnifies its insured for only part of the loss, the insured retains the right of action for the entire loss.

15. **Actions: Insurance: Subrogation: Tort-feasors: Parties.** When a subrogated insurer has compensated its insured for the entire loss sustained as a result of the tortfeasor's conduct, then the insurer, rather than the insured, is the real party in interest in an action to recover from the tortfeasor.

16. **Actions: Insurance: Subrogation: Notice: Compromise and Settlement: Tort-feasors.** The rule against claim splitting will not apply to prevent an insurer from filing suit in its own name to enforce a subrogation claim when, with notice of the subrogation claim, the

insured settles with the tortfeasor without protecting the subrogation claim.

Appeal from the District Court for Adams County, STEPHEN R. ILLINGWORTH, Judge, on appeal thereto from the County Court for Adams County, MICHAEL P. BURNS, Judge. Judgment of District Court reversed and remanded with directions.

Jared J. Krejci, of Smith, Johnson, Allen, Connick & Hansen, for appellant.

Brad Entwistle, of Walentine O'Toole, L.L.P., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

STACY, J.
The issue in this appeal is whether North Star Mutual Insurance Company (North Star) violated the rule against claim splitting when it filed a subrogation action in its own name, without joining its insured. The county court dismissed North Star's complaint without prejudice on that basis, and the district court reversed. We now reverse the judgment of the district court and remand the matter with directions to affirm the judgment of the county court.

## BACKGROUND

On or about May 21, 2020, Julie Blazer was operating her vehicle in Hastings, Nebraska, when she was struck by a pickup truck being operated by Travis Stewart. At the time of the accident, Blazer was insured with North Star. It appears North Star paid Blazer insurance benefits as a result of the accident, but the amount of any such benefits and the coverage(s) under which the benefits may have been paid are not clear on this record.

### COUNTY COURT

On August 25, 2020, North Star filed suit against Stewart in the county court for Adams County. North Star brought

the action in its own name "as subrogee of Julie Blazer," but did not join Blazer as a party. The complaint alleged that Blazer and Stewart were involved in a motor vehicle accident which was solely and proximately caused by Stewart's negligence. The complaint further alleged that North Star "issued a policy of insurance covering" Blazer and that "as a direct and proximate result of [Stewart's] negligence, [North Star] and its Insured incurred damages in the amount of $6,710.00." The complaint contained no allegations describing the nature of Blazer's damages or the nature or amount of insurance benefits, if any, paid to Blazer by North Star. Nor is it clear from the complaint whether North Star is claiming a right of subrogation under the terms of the insurance policy, under a Nebraska statute, or under some other legal theory.

Stewart moved to dismiss the complaint, alleging it failed to state a claim on which relief could be granted[1] and failed to join Blazer as a necessary party plaintiff.[2] The motion asserted that Blazer, not North Star, was the real party in interest in any negligence action against Stewart arising from the accident and that North Star was improperly splitting Blazer's claim by suing separately to recover its subrogation interest.

At the hearing on the motion to dismiss, neither party adduced evidence. North Star generally took the position that it was allowed to file the action in its own name because "this is just a subrogation of a property damage claim for North Star" and the subrogation claim was "separate and distinct from any claim that . . . Blazer could have." The court questioned North Star's counsel about the rule against claim splitting, and specifically, it asked whether Blazer intended to "forego[]" any claim against Stewart for damages related to the accident. Counsel replied, "Your Honor, before we file any of these for [North Star], we send a letter to the insured asking them if they have any type of personal injury cause

---

[1] See Neb. Ct. R. Pldg. § 6-1112(b)(6).

[2] See § 6-1112(b)(7). See, also, Neb. Rev. Stat. §§ 25-301 and 25-318 (Reissue 2016).

of action. And then if we don't hear back from them we just proceed."

The court took the matter under advisement pending additional briefing. It also advised the parties that if documentation was provided showing that Blazer had either signed a release in favor of Stewart or was forgoing any additional claim for damages against him, "then I maybe . . . would entertain a withdrawal of the motion to dismiss."

Several days later, North Star filed an affidavit from Blazer with the clerk of the county court. The affidavit was file stamped by the clerk, but there is nothing in the record indicating it was offered or received into evidence. We summarize the affidavit here, only to assist in understanding the arguments on appeal. According to the affidavit, North Star issued Blazer a check for property damage to her vehicle, but the affidavit did not identify the amount of the check, the amount of the property damage sustained, or the amount of any deductible. The affidavit also stated that Blazer did not intend to file a lawsuit against Stewart for "physical injury."

In its written order granting Stewart's motion to dismiss, the county court stated that Blazer's affidavit was "not dispositive" of the claim-splitting issue. The court cited the rule against claim splitting discussed in *Krause v. State Farm Mut. Auto Ins. Co.*[3] and reasoned that despite the averments in Blazer's affidavit, Blazer could still sue Stewart "in a separate matter, for damages claimed as a result of the same accident alleged in this case." The court therefore concluded that Blazer remained the real party in interest for the entire action against Stewart, and it dismissed North Star's complaint without prejudice for lack of standing. North Star timely appealed to the district court.

---

[3] *Krause v. State Farm Mut. Auto Ins*. Co., 184 Neb. 588, 169 N.W.2d 601 (1969) (holding subrogating insurer may not split its insured's cause of action against tortfeasor, and when indemnity paid by insurer covers only part of insured's loss, right of action against tortfeasor remains in insured for entire loss).

### District Court

In connection with its appeal to the district court, North Star requested preparation of a transcript and bill of exceptions, but did not file a statement of errors. Consequently, the district court limited its appellate review to plain error.[4] It ultimately reversed, finding that it was plain error for the county court to apply the rule against claim splitting and that doing so deprived North Star of its right to pursue its subrogation claim. The district court generally relied on Blazer's affidavit to conclude that North Star had compensated Blazer for property damage to her vehicle and that Blazer was asserting no personal injury claims related to the accident. Based on these conclusions, it determined there was no concern that North Star was improperly splitting its insured's claim against Stewart.

Stewart filed a timely appeal, which we moved to our docket.

### ASSIGNMENTS OF ERROR

Stewart assigns, restated and consolidated, that the district court erred in (1) reviewing the county court's order for plain error and finding plain error, (2) considering Blazer's affidavit as evidence, and (3) determining North Star's action was not barred by the Nebraska rule against claim splitting.

### STANDARD OF REVIEW

Generally, a district court and a higher appellate court review an appeal from the county court for errors appearing on the record.[5] When a party appealing from county court to district court fails to file a statement of errors, the district court's review is for plain error.[6] And in appeals where the district

---

[4] See Neb. Ct. R. § 6-1518 (rev. 2022). See, also, *Houser v. American Paving Asphalt*, 299 Neb. 1, 907 N.W.2d 16 (2018).

[5] See Neb. Rev. Stat. § 25-2733(1) (Reissue 2016). See, also, *Stuthman v. Stuthman*, 245 Neb. 846, 515 N.W.2d 781 (1994); *State v. Jacobsen*, 238 Neb. 511, 471 N.W.2d 427 (1991).

[6] See § 6-1518. See, also, *Houser, supra* note 4.

court reviewed for plain error, a higher appellate court likewise reviews for plain error only.[7]

[1,2] But here, the sole issue presented on appeal is jurisdictional. The question of jurisdiction is a question of law, which an appellate court resolves independently of the trial court.[8] Because it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties,[9] we will not limit our appellate review to plain error.

## ANALYSIS

North Star filed this negligence action against Stewart in its own name, without joining its insured, seeking to recover damages in the sum of $6,710 as a result of the collision between Stewart and Blazer. The parties describe this as a subrogation action, and they frame the primary question on appeal as whether North Star has standing to bring a subrogation action in its own name. Before addressing that jurisdictional issue, we question, as a threshold matter, whether this case is properly characterized as one to enforce subrogation.

[3,4] Generally, subrogation is the right of one, who has paid the obligation which another should have paid, to be indemnified by the other.[10] A right to subrogation may arise under principles of equity, may be contractual, or may be set out in statute,[11] and no single rule can be laid down which

---

[7] *Houser, supra* note 4.

[8] *Federal Nat. Mortgage Assn. v. Marcuzzo*, 289 Neb. 301, 854 N.W.2d 774 (2014).

[9] *Id.*

[10] *SFI Ltd. Partnership 8 v. Carroll*, 288 Neb. 698, 851 N.W.2d 82 (2014); *Buckeye State Mut. Ins. Co. v. Humlicek*, 284 Neb. 463, 822 N.W.2d 351 (2012).

[11] See *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), *disapproved on other grounds, Kimminau v. Uribe Refuse Serv*., 270 Neb. 682, 707 N.W.2d 229 (2005).

will apply to every subrogation claim.[12] From the parties' briefing, we understand that North Star is claiming it has a right of subrogation against Stewart to recover sums it paid to Blazer under the terms of her automobile insurance policy as a result of loss or damage sustained in the accident. But no such allegations appear in the operative complaint.

In the complaint, North Star describes itself "as subrogee of" Blazer, but does not otherwise allege any facts which would support a right of subrogation under any recognized legal theory. The complaint does not allege that North Star paid insurance proceeds, in any amount, to Blazer under the policy as a result of damages sustained in the accident. The complaint's only reference to damages states simply that "[North Star] and its Insured incurred damages in the amount of $6,710.00" as a result of the collision. Whether North Star is claiming to be subrogated to some, or all, of this alleged damage amount is unclear.

However, because North Star describes itself as Blazer's subrogee in the complaint, we will, for purposes of analyzing whether North Star is the real party in interest only, accept the parties' characterization of this action as one seeking to recover a subrogation interest.

REAL PARTY IN INTEREST AND STANDING

[5] As framed, the jurisdictional question presented here is whether North Star is the real party in interest with standing to prosecute this subrogation action in its own name, without joining its insured. Nebraska's real party in interest statute provides that "[e]very action shall be prosecuted in the name of the real party in interest . . . ."[13] A real party in interest is one who, under the substantive law, has a claim to the relief

---

[12] See *Buckeye State Mut. Ins. Co., supra* note 10.

[13] § 25-301.

sought.[14] In this way, the real party in interest inquiry turns on the substantive law of the claim.[15]

[6,7] The purpose of the real party in interest statute is to prevent the prosecution of actions by persons who have no right, title, or interest in the cause.[16] The question whether the party who commenced an action has standing and is therefore the real party in interest is jurisdictional, and because the requirement of standing is fundamental to a court's exercise of jurisdiction, either a litigant or a court can raise the question of standing at any time.[17]

[8] A court's consideration of standing will vary depending on when the issue is raised during the progression of a case. If standing is challenged at the pleadings stage, before an evidentiary hearing and before any evidence outside of the pleadings is admitted, it is deemed a "'facial challenge.'"[18] In considering a facial challenge, a court will typically review only the pleadings to determine whether the plaintiff has alleged sufficient facts to establish standing.[19] But when an issue of standing is presented and the court holds an evidentiary hearing and reviews evidence outside the pleadings, it is considered a "'factual challenge.'"[20] When a factual challenge is made, the party opposing the motion must offer affidavits or other relevant evidence to support its burden of establishing subject matter jurisdiction.[21]

---

[14] *SID No. 67 v. State*, 309 Neb. 600, 961 N.W.2d 796 (2021).

[15] See *id.*

[16] See *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018).

[17] See *id.*

[18] *Id.* at 54, 917 N.W.2d at 451, quoting *Citizens Opposing Indus. Livestock v. Jefferson Cty.*, 274 Neb. 386, 740 N.W.2d 362 (2007).

[19] See *Jacobs Engr. Group, supra* note 16.

[20] *Id.* at 55, 917 N.W.2d at 452, quoting *Washington v. Conley*, 273 Neb. 908, 734 N.W.2d 306 (2007).

[21] *Jacobs Engr. Group, supra* note 16.

The parties dispute whether this case involves a facial challenge or a factual challenge to North Star's standing. Their disagreement turns on how we address Blazer's affidavit. Stewart argues that Blazer's affidavit was not received into evidence by the county court and thus cannot be considered part of the appellate record, while North Star generally argues that the affidavit was considered as evidence by both lower courts and should be considered as such by this court.

[9] We agree with Stewart that the affidavit is not properly before us on appeal. It is a longstanding rule that an affidavit used as evidence in the trial court cannot be considered on appeal of a cause "unless it is offered in evidence in the trial court and preserved in and made a part of the bill of exceptions."[22] Blazer's affidavit was filed with the clerk of the county court, but was not received into evidence or made part of the bill of exceptions in the trial court. We have said that if "an affidavit is not preserved in a bill of exceptions, its existence or contents cannot be known by [an appellate] court."[23]

Because Blazer's affidavit was not received as evidence by the county court and does not appear in the bill of exceptions, it cannot be considered as evidence by an appellate court. The district court, sitting as an appellate court, should not have relied on the affidavit, and we will not rely on it. Consequently, there is no evidence in the appellate record related to the motion to dismiss for lack of standing, and this appeal presents a facial challenge to North Star's standing, rather than a factual challenge. We limit our analysis accordingly.

## Nebraska Law Prohibits Claim Splitting

[10-12] The rule against claim splitting is well established in Nebraska.[24] In *Krause*,[25] we stated that "Nebraska is in

---

[22] *T. S. McShane Co., Inc. v. Dominion Constr. Co.*, 203 Neb. 318, 321, 278 N.W.2d 596, 599 (1979).

[23] *Id.*

[24] See *Schweitz v. Robatham*, 194 Neb. 668, 234 N.W.2d 834 (1975).

[25] *Krause, supra* note 3, 184 Neb. at 591, 169 N.W.2d at 603.

harmony with the prevailing rule in most jurisdictions that the insured's cause of action against the tort-feasor cannot be split and that at all times there is one cause of action on the part of the insured against the tort-feasor." We explained that "'[w]hen the indemnity paid by the insurer covers only part of the loss, . . . leaving a residue to be made good to the insured by the wrongdoer, the right of action remains in the insured for the entire loss.'"[26] We also explained:

> "In these cases the insured becomes a trustee and holds the amount of recovery, equal to the indemnity for the use and benefit of the insurer. The rule is founded on the principle that the wrongful act was single and indivisible, and gives rise to but one liability. Upon this theory[,] the splitting of causes of action is avoided and the wrongdoer is not subjected to a multiplicity of suits."[27]

[13,14] *Krause* cited various cases in support of its holding, including *Shiman Bros. & Co. v. Nebraska Nat. Hotel Co.*,[28] which held:

> The applicable rule is: "Under statutes providing that every action must be prosecuted in the name of the real party in interest, it is generally held that if the insurance paid by an insurer covers only a portion of the loss, . . . the right of action against the wrongdoer who caused the loss remains in the insured for the entire loss, and the action must be brought by him in his own name."

And recently, in *Jacobs Engr. Group v. ConAgra Foods*[29] we summarized the rule against claim splitting by stating that "when an insurer indemnifies its insured for only part of the loss[,] the insured retains the right of action for the entire loss."

[15,16] Nebraska cases have recognized two circumstances under which the rule against claim splitting will not

---

[26] *Id.* at 593, 169 N.W.2d at 604.

[27] *Id.* (emphasis omitted).

[28] *Shiman Bros. & Co. v. Nebraska National Hotel Co.*, 143 Neb. 404, 409, 9 N.W.2d 807, 811 (1943).

[29] *Jacobs Engr. Group, supra* note 16, 301 Neb. at 57, 917 N.W.2d at 453.

prevent a subrogated insurer from filing suit in its own name to enforce a subrogation interest. In *Jelinek v. Nebraska Nat. Gas. Co.*,[30] we held that when a subrogated insurer has compensated its insured for the entire loss sustained as a result of the tortfeasor's conduct, then the insurer, rather than the insured, is the real party in interest in an action to recover from the tortfeasor. And in *Milbank Ins. Co. v. Henry*,[31] we allowed an insurer to file suit in its own name to enforce its medical payment subrogation after its insured settled with and released the tortfeasor without protecting the subrogation interest. *Milbank Ins. Co.* did not directly address the rule against claim splitting, because the issue in that case was whether the insurer's subrogation right could survive separately from the insured's claim after the insured executed a release in favor of the tortfeasor. But in concluding that the insurer's right of subrogation survived the insured's settlement made with notice of the unresolved subrogation claim, we noted that settling the insured's claim without protecting the insurer's subrogation claim "'was equivalent to express consent to a splitting of the cause of action.'"[32] In that regard, our reasoning in *Milbank Ins. Co.* is consistent with the generally recognized principle that the rule against claim splitting does not apply to prevent an insurer from filing suit in its own name to enforce a subrogation claim when, with notice of the subrogation claim, the insured settles with the tortfeasor without protecting the subrogation.[33]

---

[30] *Jelinek v. Nebraska Nat. Gas. Co.*, 196 Neb. 488, 243 N.W.2d 778 (1976).

[31] *Milbank Ins. Co. v. Henry*, 232 Neb. 418, 441 N.W.2d 143 (1989).

[32] *Id.* at 422, 441 N.W.2d at 146.

[33] See, generally, 17 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d, § 241:36 at 241-52 (2005) (noting that if subrogated insurer pays only portion of loss sustained by insured, then insured remains real party in interest for entire action "except where the insured has parted with all beneficial interest in the right of action, where the insured, after settling with the wrongdoer out of court, arbitrarily refuses to bring the action, or where there is no real possibility of another action by the insured").

With this background in mind, we consider how the rule against claim splitting impacts determination of the real party in interest in this action against Stewart. North Star generally relies on Blazer's affidavit to argue that the rule against claim splitting is not implicated because Blazer has been fully compensated for all loss sustained in the accident. We do not address that argument because, as already explained, the affidavit is not before us on appeal.

Rather, this case presents a facial challenge to standing, and to resolve such a challenge, a court reviews the pleadings to determine whether there are sufficient allegations to establish standing, accepting the allegations of the complaint as true and drawing all reasonable inferences in favor of the non-moving party.[34]

## Complaint Does Not Show North Star Is Real Party in Interest

In the complaint, North Star purports to bring the negligence action against Stewart as Blazer's "subrogee" to recover damages caused by the accident. Under the rule against claim splitting, and even assuming North Star has a valid subrogation interest under some theory, Blazer is the real party in interest for the entire action against Stewart, not North Star.[35] Moreover, the complaint contains no facts suggesting that any exception to the rule against claim splitting applies here. North Star's complaint does not allege that it has compensated Blazer for any of the damage or loss she sustained in the accident, let alone fully compensated her for all sustained damage or loss.[36] Nor is there an allegation that Blazer settled with Stewart without protecting North Star's subrogation interest.[37] As to

---

[34] *Jacobs Engr. Group, supra* note 16.

[35] See, *id.*; *Krause, supra* note 3; *Shiman Bros. & Co., supra* note 28.

[36] See *Jelinek, supra* note 30.

[37] See, *Milbank Ins. Co., supra* note 31; 17 Couch on Insurance 3d, *supra* note 33.

damages, the only allegation in the complaint is that "as a direct and proximate result of [Stewart's] negligence, [North Star] and its Insured incurred damages in the amount of $6,710.00." At best, this suggests that both the insured and the subrogated insurer are entitled to recovery against Stewart, and under that circumstance, the rule against claim splitting applies.

On appeal, North Star generally concedes it has not alleged facts suggesting that its insured has been fully compensated for all loss sustained in the accident. But it argues that other insurers, including the insurer defending Stewart in this case, regularly file subrogation actions in their own name without joining the insured and without affirmatively alleging that the insured has been fully compensated. We have no evidence of such in our record, but even if we did, the argument that it is commonplace to disregard the rule against claim splitting is not one we find persuasive. The question whether a party who commences an action has standing to bring the action is fundamental to a court's exercise of jurisdiction,[38] and courts are not free to disregard the question just because the parties have.

Viewed in the light most favorable to North Star, the allegations of the complaint are insufficient to demonstrate that North Star has standing to commence this action in its own name. We therefore agree with the county court that under the rule against claim splitting, North Star's insured is the real party in interest in this action. On this record, the district court erred in concluding otherwise.

For the sake of completeness, we note that under Nebraska's real party in interest statute, an action "shall not be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for joinder or substitution of the real party in interest."[39] Here, the county court dismissed the complaint

---

[38] See *Jacobs Engr. Group, supra* note 16.

[39] § 25-301.

without prejudice, but did not expressly allow time for North Star to file an amended complaint seeking to join or substitute Blazer.

North Star has not assigned error to the dismissal procedure, and, as a practical matter, the dismissal without prejudice does not preclude North Star from filing a new complaint. But the better practice would have been for the court to allow North Star a reasonable period of time to file an amended complaint either joining or substituting the real party in interest, before dismissing the action on the basis it was not being prosecuted in the name of the real party in interest.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court and remand the matter with directions to affirm the judgment of the county court.

Reversed and remanded with directions.