CONTINENTAL WESTERN INSURANCE COMPANY, APPELLANT, V. DEBRA SWARTZENDRUBER, DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLEE, AND FARM BUREAU INSURANCE COMPANY, INC., THIRD-PARTY DEFENDANT, APPELLEE.

570 N.W.2d 708

Filed November 21, 1997.   No. S-96-247.

Alan L. Plessman, of Plessman Law Offices, for appellant.

Lance J. Johnson, of Germer, Murray & Johnson, for appellee Swartzendruber.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

GERRARD, J.

## INTRODUCTION

Debra Swartzendruber (formerly Debra Croxen) was injured and her husband, Ronald Croxen, was killed when they were involved in a motor vehicle accident with Richard Girmus on August 17, 1989. Swartzendruber's automobile insurance company, Continental Western Insurance Company (Continental Western), paid Swartzendruber $8,540 for the property damage to her truck. Swartzendruber later settled the personal injury and wrongful death claims against Girmus and Farm Bureau Insurance Company, Inc. (Farm Bureau), Girmus' insurer.

Continental Western first brought a declaratory judgment action against Farm Bureau and Swartzendruber in the Lancaster County District Court, claiming that the settlement agreement compromised its right to subrogation. In that action, the district court entered judgment in favor of Farm Bureau and Swartzendruber, and the Nebraska Court of Appeals affirmed the district court's judgment. *Continental Western Ins. Co. v. Farm Bureau Ins. Co.*, 2 Neb. App. 527, 511 N.W.2d 559 (1994). Specifically, the Court of Appeals determined that Swartzendruber did nothing to jeopardize Continental Western's subrogation interest and that Continental Western had a subrogation claim for $8,540, which it could bring against Girmus or Farm Bureau. *Id.* Instead, Continental Western brought the instant action directly against its insured, Swartzendruber, in the Fillmore County District Court for reimbursement of its property damage payment from the proceeds of the personal injury and wrongful death settlement pursuant to its asserted right of subrogation. Swartzendruber, in turn, filed a third-party complaint against Farm Bureau. Following a bench trial, the district court concluded that Swartzendruber was not required to reimburse Continental Western from the settlement proceeds and entered judgment accordingly. Because we conclude that the district court's judgment conforms to the law, we affirm.

## FACTUAL BACKGROUND

This action arises out of an automobile accident that occurred in Fillmore County, Nebraska, wherein Farm Bureau's insured, Girmus, was driving a pickup truck in a westerly direction when it collided with a southbound truck driven by Ronald Croxen at the intersection of two county roads. Ronald Croxen died as a result of the accident; his wife, Swartzendruber, was seriously injured; and their truck was totally demolished.

Swartzendruber's insurance company, Continental Western, made payment to Swartzendruber of $8,540 under the property damage provision of her automobile insurance policy for the value of the demolished truck. The insurance policy contained the following provision:

OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to

recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

By virtue of the payment, Continental Western obtained a subrogation interest in Swartzendruber's property damage claim against Girmus and Farm Bureau, and a right to reimbursement if Swartzendruber should again be paid for the loss of the truck.

After the accident, Swartzendruber brought wrongful death and personal injury claims against Girmus and Farm Bureau, which were eventually settled on November 2, 1990. The settlement did not include resolution of the property damage claim to which Continental Western was subrogated because Continental Western and Farm Bureau were unable to reach an agreement as to the value of the claim. Paragraph 15 of the settlement agreement states:

[Swartzendruber] and Farm Bureau agree and acknowledge that the payments to [Swartzendruber] described in Paragraph 2. hereof specifically exclude any payments for property damage to the 1987 Chevrolet S10 pickup owned by [Swartzendruber]. . . . In the event that it is determined, by judgment or agreement, that Farm Bureau is indebted to [Swartzendruber] or Continental Western Insurance Company for property damage to the 1987 Chevrolet S10 pickup owned by [Swartzendruber], then, in that event, Farm Bureau will promptly pay to [Swartzendruber] or Continental Western Insurance Company (as their interest may be affected) the amount of damages so determined.

The settlement agreement between Farm Bureau and Swartzendruber specifically excludes the property damage claim from the aegis of the settlement agreement.

As set forth in the introduction, Continental Western filed suit directly against Swartzendruber for reimbursement of the $8,540 property damage payment from the proceeds of the personal injury and wrongful death settlement pursuant to its asserted right of subrogation. The district court entered judgment in favor of Swartzendruber and dismissed Continental Western's petition. Continental Western timely appealed to the Court of Appeals. We removed the case from the Court of Appeals' docket pursuant to our power to regulate the caseloads of this court and the Court of Appeals.

## ASSIGNMENT OF ERROR

Continental Western's sole assignment of error is that the decision of the district court "is contrary to law."

## SCOPE OF REVIEW

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Four R Cattle Co. v. Mullins, ante* p. 133, 570 N.W.2d 813 (1997).

## ANALYSIS

Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *Kramer v. Kramer*, 252 Neb. 526, 567 N.W.2d 100 (1997); *State ex rel. Stenberg v. Moore*, 251 Neb. 598, 558 N.W.2d 794 (1997). In its brief, Continental Western contends that under the "recovery of payments" provision in the insurance contract it had with Swartzendruber, it is entitled to reimbursement for the property damage payment it made to Swartzendruber from *any* moneys that Swartzendruber received as a result of the accident. Furthermore, at oral argument, Continental Western claimed that only section A of the policy provision in question deals with subrogation and that section B is a wholly distinct contractual undertaking between the parties. It is from that distinct "contractual reimbursement" right in section B that Continental Western asserts a contractual right to

recover under the terms of the insurance policy. As we hereinafter explain, Continental Western's "contractual reimbursement" theory is without merit and will not prevent the application of subrogation law to this case. The settled subrogation law of this state, in turn, prevents Continental Western from seeking reimbursement from Swartzendruber's personal injury and wrongful death settlement proceeds.

It is well established that in the absence of an express provision to the contrary, an insurance policy reaffirms the rights of parties relative to subrogation but does not alter the fundamental principles pertaining to subrogation. *Shelter Ins. Cos. v. Frohlich*, 243 Neb. 111, 498 N.W.2d 74 (1993). Therefore, if a contractual right of subrogation is merely the usual equitable right which would have existed in any event in the absence of a contract, equitable principles control subrogation. *Id.* The first question, then, is whether section B of the "recovery of payments" provision describes rights that would have existed under equitable principles of subrogation. If so, section B cannot be fairly characterized as a distinct contractual undertaking between the parties, wholly separate from Continental Western's right to subrogation.

Subrogation involves a substitution of one person in the place of another with reference to a lawful claim, demand, or right, so that the one who is substituted succeeds to the rights of the other in relation to the debt or claim and its rights, remedies, or securities. *Leader Nat. Ins. v. American Hardware Ins.*, 249 Neb. 783, 545 N.W.2d 451 (1996); *Jindra v. Clayton*, 247 Neb. 597, 529 N.W.2d 523 (1995). In the context of insurance, the right to subrogation is based on *two* premises: (1) A wrongdoer should reimburse an insurer for payments that the insurer has made to its insured, and (2) an insured should not be allowed to recover twice from the insured's insurer and the tort-feasor. *Frohlich, supra.*

In *Frohlich, supra*, we plainly recognized that the equitable theory of subrogation in the context of an insurance contract is twofold. First, as section A of the "recovery of payments" provision of Continental Western's policy provides, the insurer stands in the shoes of the insured with respect to claims against a wrongdoer when the insurer has made payment under the pol-

icy. Second, as section B provides, the insured is not entitled to double recovery from the insurer and the wrongdoer. This second aspect of subrogation is an insurer's right to reimbursement from its insured when recovery has been had from both the insurer and the wrongdoer.

The idea that a right to reimbursement is encompassed within the concept of subrogation is not new to this state. In *Krause v. State Farm Mut. Auto. Ins. Co.*, 184 Neb. 588, 169 N.W.2d 601 (1969), we addressed a different issue with respect to subrogation, but the holding of the case rested on the premise that reimbursement is part of the equity of subrogation. We stated that premise as follows:

> " 'Where the assured, as in case of partial insurance, sustains a loss, in excess of the reimbursement or compensation by the underwriter, he has an undoubted right to have it satisfied by action against the wrong-doer. *But if, by such action, there comes into his hands, any sum for which, in equity and good conscience, he ought to account to the underwriter, reimbursement will, to that extent, be compelled in an action by the latter, based on his right in equity to subrogation. . . .'. . ."*

(Emphasis in original.) *Id.* at 591-92, 169 N.W.2d at 603. Because the contractual right of subrogation in Continental Western's policy is merely a statement of the usual equitable rights which would have existed in any event in the absence of a contract, equitable principles of subrogation control this case. Section B of the "recovery of payments" provision does not create a contractual right that is different from Continental Western's equitable right to subrogation.

Under principles of equity, an insurer is entitled to subrogation only when the insured has received, or would receive, a double payment by virtue of an insured's recovering payment of all or part of those same damages from the tort-feasor. *Shelter Ins. Cos. v. Frohlich*, 243 Neb. 111, 498 N.W.2d 74 (1993). In *Frohlich*, we addressed the precise question presented by this case, although the benefits in question in that case were medical payments rather than a property damage payment. We held that "[a]llowing an insurer to subrogate against an insured's settlement when an insured has not been fully compensated would

mean that all the insured's settlement could be applied to a medical payment subrogation claim with nothing left to compensate the insured for excess medical bills or personal injuries." *Id.* at 123, 498 N.W.2d at 82. In *Frohlich*, we were clearly addressing the insurer's right to reimbursement when we referred to its right to "subrogate" against the insured's settlement proceeds. Furthermore, we held that equity requires that the insured be fully compensated before the insurer would be allowed to seek reimbursement from settlement proceeds.

In this case, Continental Western urges us to allow it to proceed against Swartzendruber's wrongful death and personal injury settlement with Farm Bureau. To do so would leave Swartzendruber uncompensated for the property damage to her truck because Farm Bureau compensated Swartzendruber only for the wrongful death and personal injury losses she sustained. Such a result was unequivocally rejected in *Frohlich, supra.* " '[T]he insurer should not "recover sums received by the insured from the tort source until the insured has been fully indemnified." ' " *Id.* at 123, 498 N.W.2d at 81-82 (quoting *Oss v. United Services Auto. Ass'n*, 807 F.2d 457 (5th Cir. 1987)).

The settlement agreement between Swartzendruber and Farm Bureau makes it clear that the settlement does not compensate Swartzendruber for property damage to her truck; paragraph 15 of the agreement is unambiguous on that point. In fact, the settlement agreement specifically protects Continental Western's subrogation interest in the property damage claim, in that Farm Bureau expressly agrees to pay the claim should Farm Bureau be held liable or concede liability. Furthermore, Continental Western has not alleged that Swartzendruber was fully compensated by the settlement with Farm Bureau. Because Swartzendruber has not received a double payment for her property damage losses, we conclude that the basic principles of subrogation mandate that Continental Western may not invoke the reimbursement provision of its policy to force Swartzendruber to repay the moneys she received from Continental Western for property damage to her truck.

Continental Western's position in this case is particularly troublesome, given the facts that Swartzendruber paid Continental Western premiums for the risk it assumed and that

Continental Western would have been obligated to make payment for the property damage under its policy irrespective of whether or not a potentially culpable third party was found. " ' "[W]here either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume.". . .' " *Shelter Ins. Cos. v. Frohlich*, 243 Neb. 111, 122, 498 N.W.2d 74, 81 (1993) (quoting *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 316 N.W.2d 348 (1982)).

## CONCLUSION

For the foregoing reasons, we determine that the order of the district court conforms to the law, and, therefore, we affirm the judgment of the district court.

AFFIRMED.